NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MUHAMMAD BHATTI and CHRISTINA BHATTI, <br><br> Plaintiffs, <br><br> v. <br><br> HARMON STORES, INC., *et al.*, <br><br> Defendants. | Civ. No. 16-523 (KM) <br><br> MEMORANDUM OPINION and ORDER |

MCNULTY, U.S.D.J.:

The plaintiffs, Muhamma Bhatti and Christina Bhatti, bring this action against their former employer, defendant Harmon Stores, Inc. Harmon has filed a motion (ECF no. 3) to dismiss the complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). The Bhattis responded with a cross-motion to amend their complaint (ECF no. 9). Harmon, with leave, filed a reply (ECF no. 12). For the reasons stated herein, the motion to amend is granted, and the motion to dismiss is denied as moot.

I.  APPLICABLE STANDARDS

   A.   Motion to Amend

A party may amend its pleading once as a matter of course within certain time limits. Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "[L]eave [to amend] shall be freely given when justice so requires." *Id.* Accordingly, the courts "have shown a strong liberality ... in allowing amendments under Rule 15(a)." *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing*, 663 F.2d 419, 425 (3d

Cir.1981) (quoting 3 J. Moore, Moore's Federal Practice ¶ 15.08(2) (2d ed. 1989)).

In *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227 (1962), the Supreme Court identified factors relevant to a motion to amend under Rule 15(a):

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* at 182, 83 S. Ct. at 230. Amendment may be denied if it would be "futile," *i.e.*, if the complaint, as amended, "would not withstand a motion to dismiss." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983); *see also Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001); *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984).

### B. Motion to Dismiss

FED. R. CIV. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly* case, *infra*).

FED. R. CIV. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a

2

speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

## II. DISCUSSION

The plaintiffs, confronted by a motion to dismiss pointing out deficiencies in their original complaint, responded with a motion to amend that complaint. For the reasons expressed herein, I will grant that motion to amend and deny the motion to dismiss as moot.

### A. The Proposed Amended Complaint

The original complaint in this action was filed on January 29, 2016. (ECF no. 1) On April 15, 2016, Harmon filed a waiver of service and motion to dismiss. (ECF nos. 3, 4) On May 30, 2016, the Bhattis filed a cross-motion to amend their complaint. (ECF no. 9) The motion was accompanied by a proposed amended complaint ("1AC", ECF no. 9-2). I briefly summarize the allegations of the proposed 1AC.

Muhammad Bhatti began working for Harmon in 1992, and remained there for 22 years. (1AC ¶ 15) During his tenure, Harmon was purchased by Bed Bath & Beyond, a retail chain. In 1997, Bhatti was promoted to store manager, and in 2002 to District Manager. (1AC ¶¶ 17, 18) In connection with promotion, he was assured by Harmon executive Newt Sheldon that he would stay at the company "as long as you want to," and he received similar assurances from others. (1AC ¶ 19) In 2014, he was promoted to Retail District Manager, a senior position. (1AC ¶ 21)

In 2012, a store manager, "Christian," shared nude pictures with another employee. He was placed on "final warning" by Samantha Savastano, the Human Resource Manager. (1AC ¶ 24)

Another employee, Joseph Bosotina, with whom Mr. Bhatti was once friendly, also committed misconduct at work. Two employees accused Bosotina of sexual harassment, but he was not terminated or suspended. (1AC ¶ 27) In 2013 Bosotina made romantic overtures to Savastono, but was not suspended or terminated. (1AC ¶ 28)

Another Store Manager, Ronald Samuels, made inappropriate comments to female employees. He was required to meet with Savastono and other officials on six occasions, but was never suspended or terminated. (1AC ¶ 29)

The employees referred to in the preceding paragraphs were "white males unlike Mr. Bhatti who was born in Kuwait, and of Muslim beliefs." (1AC ¶ 30) "Plaintiff Muhamma Bhatti had an expectation of job security developed, at least in part, by ... his observations of the manner in which disciplinary issues were handled by Defendant Harmon Stores, with other employees." (1AC ¶ 31) For 22 years, Mr. Bhatti's record was unblemished, and he was praised in writing by the CEO. (1AC ¶ 32) All of the above facts contributed to Mr. Bhatti's belief that he was a contractual, not at-will, employee. (1AC ¶ 34)

Mrs. Bhatti, too, had an exemplary record and rose to the level of District Manager at Harmon. (1AC ¶ 36) In 2007, when Mrs. Bhatti was pregnant, VP of Operations Alan Jacobson demoted her to Cosmetic Supervisor, causing her to lose her entitlement to bonuses and a company car. (1AC ¶ 39) Another pregnant employee was not demoted. (1AC ¶ 40)

Jacobson avoided Mr. Bhatti socially, while communicating amicably with other employees. (1AC ¶ 42) He favored Mike Kratzel, who had an inferior customer service record, with a promotion and a better assignment. (1AC ¶ 43) Mr. Bhatti complained to Savastano and Sheldon. (1AC ¶¶ 46, 47)

Jacobson ordered Mr. Bhatta to transfer Bosotina, who was planning to retire, to a low volume store. (1AC ¶¶ 49, 50) Bosotina objected and alleged age

discrimination. In particular, he said that Mr. Bhatti had made discriminatory remarks about his age. (1AC ¶¶ 51, 52)

On January 31, 2014, Jacobson asked Mr. Bhatti to sign a document ending his employment. Mr. Bhatti refused, and Jacobson then fired him, saying that Mr. Bhatti had "broken the law" by discriminating against Bosotina. (1AC ¶¶ 54–56)

Count 1 of the 1AC asserts that an implied employment contract existed between Mr. Bhatti and Harmon, evidenced by a course of conduct and specific assurances. Harmon allegedly breached that contract when it fired Mr. Bhatti.

Count 2 of the 1AC alleges a breach of the covenant of good faith and fair dealing that is implied in every contract under New Jersey law.

Count 3 of the 1AC asserts a tort claim of intentional infliction of emotional distress ("IIED").[1]

### B.   Analysis

On June 13, 2016, with leave, Harmon filed a reply to the cross-motion to amend. (ECF no. 12) Harmon does not stress the Rule 15 factors of delay or prejudice. Rather, Harmon argues that the proposed amended complaint should be rejected as futile, because it could not withstand a motion to dismiss under Rule 12(b)(6). *See, e.g., Massarksy, supra.* In essence, Harmon has adapted its pending motion to dismiss to the context of the proposed amended complaint.

#### 1. Breach of Contract/Covenant of Good Faith & Fair Dealing

Mr. Bhatti contends that his years of service, positive evaluations, verbal representations, the employee manual, and the incentive plan, all add up to an enforceable contract that was breached by his dismissal. He alleges that both the explicit terms of that contract, and its implied covenant of good faith and fair dealing, were violated.

---

[1]   Pages 15 and 16 are missing from the proposed amended complaint as filed. I have obtained an intact copy from plaintiffs' counsel, who are directed to file a complete copy of the amended complaint.

5

The barriers to such a claim are very high indeed. In the employment context, New Jersey courts have created a default rule: Unless the parties agree otherwise, an employment relationship is at-will. Such an at-will relationship can be terminated by either party for any reason or for no reason, *See Wade v. Kessler Inst.*, 798 A.2d 1251, 1258–59 (N.J. 2002), so long as the reason for dismissal does not independently violate public policy, *Pierce v. Ortho Pharmaceutical Corp.*, 417 A.2d 505, 508-09 (N.J. 1980).

An employer's representations in a widely distributed publication like an employee manual may give rise to enforceable obligations. When the manual, fairly read, provides that certain benefits are an incident of employment, an implied contract between the employer and the employee is created. *Woolley v. Hoffman-La Roche, Inc.*, 491 A.2d 1257, 1264 (N.J. 1985). The representations relied upon, however, must be reasonably specific. *See Kapossy v. McGraw-Hill, Inc.*, 921 F. Supp. 234, 245, n.12 (D.N.J. 1996) ("the generalized conclusory statements of purpose contained in these documents do not give rise to contractual rights"); *Tripodi v. Johnson & Johnson*, 877 F. Supp. 233, 240 (D.N.J. 1995) ("Corporate 'Credo' which states general policies and goals of the company lacks the specificity required by *Woolley*).

Harmon replies that such employer publications may explicitly and effectively disclaim any intent to create contractual obligations:

> [I]f the employer, for whatever reason, does not want the manual to be capable of being construed by the court as a binding contract...[a]ll that need be done is the inclusion in a very prominent position of an appropriate statement that there is no promise of any kind by the employer contained in the manual; that regardless of what the manual says or provides, the employer promises nothing and remains free to change wages and all other working conditions without having to consult anyone and without anyone's agreement; and that the employer continues to have the absolute power to fire anyone with or without good cause.

6

*Woolley*, 491 A.2d at 1271. Harmon attaches excerpts from the Associates' Handbook and the Incentive Compensation Plan.[2] The Handbook states on its first substantive page, as an "Important Notice," that "Harmon Stores, Inc. is an at-will employer. This means that employment with Harmon Stores, Inc. can be terminated with or without cause and with or without notice." (ECF no. 3-2 at 19) The Incentive Plan states that it does not confer "any right with respect to continuance of employment" and does not limit the Company's right "to terminate." (ECF no. 12-2)[3] Harmon also relies on these documents to argue that it has a "zero tolerance" policy for harassment.

These are weighty arguments. Still, Mr. Bhatti alleges a more general course of conduct and representations by the employer that supposedly undermine the statements in these documents and create an implied contract. That contract, he says, entitled him to job security. Harmon's treatment of comparable allegations allegedly exposes its "zero tolerance" policy as a sham and supports Mr. Bhatti's contention that he was dismissed on a pretext in violation of his contractual rights. Without context, the documents attached by Harmon do not unambiguously speak for themselves and I am unable, at the pleading stage, to weigh Harmon's contentions against those of Mr. Bhatti.

The motion to dismiss Counts 1 and 2 is denied.

### 2. Intentional Infliction of Emotional Distress (IIED)

Count 3 alleges IIED. The alleged emotional distress consists of mental anguish, humiliation, and embarrassment. The distress allegedly resulted from the loss of employment, as well as Harmon's report to the Division of

---

[2] Because these documents are integral to the complaint, which cites and relies on them, they are properly considered on a motion to dismiss. *See In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 & n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" ) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).

[3] Harmon states that New York law governs, but does not brief the issue of choice of law as it applies to the implied contract claim.

7

Unemployment Insurance that Mr. Bhatti was dismissed for violation of a "reasonable and known policy." Count 3 adds that, if Bosotina had been dismissed based on Bosotina's own misconduct, Mr. Bhatti would never have been in a position to allegedly discriminate against him.

The New Jersey Supreme Court has laid out the essential elements of IIED:

> [T]he plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. Initially, the plaintiff must prove that the defendant acted intentionally or recklessly. For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow.
>
> Second, the defendant's conduct must be extreme and outrageous. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Third, the defendant's actions must have been the proximate cause of the plaintiff's emotional distress. Fourth, the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it."

*Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366-67, 544 A.2d 857, 863 (1988) (internal citations omitted); *see also Dello Russo v. Nagel*, 817 A.2d 426, 435 (App. Div. 2003).

Dismissal of an employee, however regrettable the consequences, does not ordinarily give rise to an IIED claim:

> [I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988), *cert. denied*, 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990); *see also GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612-13 (Tex. 1999); " '[W]hile loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event' and cannot provide a basis for recovery for infliction of emotional distress." *Cox, supra*, 861 F.2d at 395 (quoting *Brieck v.*

*Harbison-Walker Refractories*, 624 F.Supp. 363, 367 (W.D. Pa. 1985), *aff'd in relevant part*, 822 F.2d 52 (3d Cir. 1987)). *Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 297 (N.J. Super. App. Div. 2001); *accord Catullo v. Liberty Mut. Group, Inc.*, 2012 WL 762163 at *9 (D.N.J. Mar 6, 2012); *Jewett v. IDT Corp.*, 2008 WL 508486 at *4 (D.N.J. February 20, 2008). The allegations, then, must establish something beyond an ordinary breach of contract or wrongful dismissal.

Count 3 alleges nothing beyond the usual anguish associated with termination of employment, anguish unfortunately suffered and endured by many. The dismissal is not alleged to have involved extreme or outrageous conduct, nor is the resulting distress so severe that no reasonable person could be expected to endure it. The report to the Unemployment Division, because Harmon did not follow up, did not interfere with Mr. Bhatti's eligibility for benefits. (1AC Ex. B, ECF no. 9-2 at 22)

The motion to dismiss Count 3 is therefore GRANTED.

## CONCLUSION

The issues raised here are more appropriately considered on summary judgment. A relatively small amount of discovery may position the case for such a motion on the issue of the existence and terms of any implied contract.

Accordingly, IT IS this 28th day of September, 2016

ORDERED that the motion (ECF no. 3) to dismiss the original complaint is dismissed as moot; and it is further

ORDERED that the cross-motion (ECF no. 9) to amend the complaint is GRANTED. Because the court has already analyzed the amended complaint under a motion to dismiss standard, the defendant shall, unless the Magistrate Judge grants leave, answer rather than move in response.

**HON. KEVIN MCNULTY, U.S.D.J.**